Bolton v. Board of Education, Dist. No. 3.

Reversed and remanded.

JAMES BOLTON

v.

THE BOARD OF EDUCATION, DIST. NO. 3.

1. SCHOOL DISTRICTS—POWER TO ISSUE BONDS—VOTE—HOW DETERMINED.—The right of school directors to issue bonds of their district, is made dependent upon a vote of the people of the district. The question whether there has been an election for that purpose, and a vote in favor of issuing bonds, is left by the Legislature to be determined by the directors of the district, two of whom are required to act as judges, and one as clerk of the

election, and their determination of the question is final as to all *bona fide* purchasers for value of such bonds.

3. RECITALS IN BONDS—ESTOPPEL.—Where bonds issued by school directors contain recitals that they were issued by virtue of a vote of the district, and according to law, the district is estopped to deny that such vote had been taken, the bonds being in the hands of a *bona fide* holder.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Mr. B. D. MAGRUDER, for appellant; as to recitals in the bonds and rights of innocent holders, cited Town of Coloma v. Eaves, 2 Otto, 484; Marcy v. Township of Oswego, 2 Otto, 637; Humboldt Township v. Long, 2 Otto, 642; Mary et al. v. Williamson Co. et al. 72 Ill. 207; Cairo & St. Louis R. R. Co. v. City of Sparta, 77 Ill. 505; Mason et al. v. City of Shawneetown, 77 Ill. 533.

That the court erred in refusing to admit as evidence the answer of the defendant, filed in a proceeding in chancery to enjoin the collection of a tax levied to pay bonds issued by the defendant: Robbins v. Butler et al. 24 Ill. 428.

Mr. H. C. IRISH, Mr. E. M. HAINES and Mr. IRA W. BUELL, for appellee.; upon the power of municipal corporations to issue bonds, cited 1 Gross' Stat. 697, § 47; 1 Dillon on Mun. Cor. 524; School Directors v. Miller, 54 Ill. 338 ; Bissell et al. v. Kankakee, 64 Ill. 249; Mayor v. Ray, 19 Wall. 468; Marsh v. Fulton Co. 10 Wall. 676; Starin v. Genoa, 23 N. Y. 437.

As to proof of the authority under which the bonds were issued, and recitals as evidence: School Directors v. Taylor, 54 Ill. 289; School Directors v. Sippy, 54 Ill. 287; Bissell et al. v. Kankakee, 64 Ill. 249; School Directors v. Fogleman, 76 Ill. 189; Town of Middleport v. Ætna Ins. Co. 82 Ill. 562.

That the officers of a corporation cannot by their own act create an estoppel against the corporation: Bissell et al. v. Kankakee, 64 Ill. 249; Ryan v. Lynch, 68 Ill. 160; Mayor v. Ray, 19 Wall. 468; 1 Dillon on Mun. Cor. 524; Town of South Ottawa v. Perkins, 9 Chicago Legal News, 290; County of Dallas v. Mackenzie, 9 Chicago Legal News, 298; Clark v.

Des Moines, 19 Iowa, 199; Marsh v. Fulton Co. 10 Wall, 676; Chisholm v. City of Montgomery, 2 Woods, 584; Starin v. Genoa, 23 N. Y. 437.

That the bonds in suit were not issued for a corporate purpose: Gross' Stat. 695, § 43; School Directors v. Sippy, 54 Ill. 287.

That a purchaser of municipal bonds is bound to take notice of the extent of the powers exercised by the officers of a municipal corporation: 1 Dillon on Mun. Cor. 464, note.

As to the constitutional prohibition against municipal corporations issuing bonds: Law v. The People ex rel. 10 Chicago Legal News, 171; Constitution of 1870, Art. IX. § 12.

Murphy, P. J.   This was an action of debt, commenced in the Superior Court of Cook county, to the November term, 1875, by the appellant against the appellee, to recover on four bonds issued by the appellee in November, 1870, for the sum of $500.00 each, for money borrowed, as appears by recitals on the face of the bonds, for the purpose of building a school house in said district.   They are made due and payable four years after their dates, respectively, with interest at the rate of ten per cent. per annum, payable annually.

The declaration contains four counts to which the defendant pleaded: first, *non est factum*, sworn to ; second, *nil debet;* third, that the bonds were not issued for the purpose of borrowing money to build a school house, etc.; fourth, that said bonds were not issued in pursuance of a majority vote of the legal voters of said School District No. 3, etc.; fifth, that at the date of said bonds, the sum of money already borrowed during said year of 1870, by said district, including previous indebtedness of said district, exceeded five (5) per cent. of the taxable property of said district.   To the appellee's 2d, 3d, 4th and 5th pleas, the appellant filed demurrers, which were sustained by the court, and the appellee, abiding by its demurrers as to said pleas, the cause came on for trial upon the plea of *non est factum*, which resulted in a verdict and judgment for the appellees, and the appellant brings the record here, and assigns for error the giving by the court, on its own motion, of an instruc-

tion: "That the verdict should be for the defendant," and that the court erred in requiring the plaintiff to prove an election before admitting the bonds in evidence.      There are other errors assigned ; but it will be unnecessary for us to consider them.

The declaration alleges that the defendant is the successor-in-law of the school directors of district No. 3, township No. 37, county of Cook and State of Illinois, who issued the bonds counted upon; that on or about the first Monday of April, 1873, the defendant became and was duly organized as a body corporate and politic, by a vote of the legal voters of said district, under the name of the Board of Education of District No. 3, Township 37, county of Cook and State of Illinois, and thereby became liable for the payment of these bonds.

It appears that these bonds were issued by the directors of this district, for the purpose of borrowing money to aid in the construction of a school house in that district, and that the appellant is a *bona fide* purchaser for value.

The bonds involved were issued under and by virtue of Section 47 of Chapter 98, of Gross' Statutes of this State, which is as follows: "For the purpose of building school houses or purchasing school sites, or for repairing and improving the same, the directors, by a vote of the people, may borrow money, issuing bonds, executed by the officers, or at least two members of the board, in sums of not less than $100.00, but the rate of interest shall not exceed ten (10) per cent., nor shall the sum borrowed in any one year for building school houses, exceed three per cent. of said taxable property." By which it will be seen that a vote of the people in favor of such action, is necessary as a condition precedent to the exercise of such power by the officers of such district.

By the provisions of section 42, of the same chapter, the mode of taking a vote of the people is provided for, and directing how it shall be conducted, and by whom, in the following terms: "Notice of all elections in organized districts shall be given by the directors at least ten days previous to the said election.   Said notices shall be posted in at least three (3) of

the most public places in the district, and shall specify the place where such election is held, the time of opening and closing the polls, and the question or questions to be voted on. Two of the directors shall act as judges, and one as clerk of said election. * * * The directors shall appoint one of their number as clerk, who shall keep a record of all the official acts of the board in a well bound book provided for the purpose, which record shall be submitted to the township treasurer for his inspection and approval on the first Mondays of April and October, and at such other time as the township treasurer may require." From the provisions of the statute it is apparent for what purpose and under what circumstances the directors of the school districts may issue bonds, borrow money, and incur a valid liability against the district they represent. It is only for the specified objects of building school houses or purchasing school sites, or repairing and improving the same, that this power can be exercised at all, and then only by the consent and direction of the legal voters of the district (formally expressed), at an election for that purpose, called and conducted by the directors, as required by the statute. It is to be observed that the question is between the district and a person claiming through the action of its agents as a *bona fide* purchaser, for value of commercial paper issued and put in circulation by them, and taken in the market by appellant upon the faith of their apparent authority.

From the foregoing statute it is obvious that the right to issue the bonds by the directors was made dependent upon a vote of the people of the district whether they would borrow money for the purpose therein expressed, and the first question is, how is it to be ascertained, whether these conditions have been complied with; whether, indeed, there has been any election held for such purpose as required by law; and if so, whether a majority of the votes cast at such election were in favor of the issue of these bonds in controversy.

These are questions which must be settled and determined by the officers who by the law are required to perform these acts, and to whose judgment and determination they are submitted by law. It is important to know when these facts are

198     APPELLATE COURTS OF ILLINOIS.

Bolton v. Board of Education, Dist. No. 3.

to be ascertained, whether before or at the time of their issue, or after, and whether they must be ascertained every time payment is demanded either of principal or interest on such bonds. It is plain that the Legislature intended to vest the power to determine these questions somewhere, and authorize somebody to settle and determine them, and when once determined, to be a final determination of the question as to all bona fide purchasers for value.

The only persons spoken of in the act as having anything to do in posting the required notices and conducting the election, are the directors of the district, two of whom are required to act as judges, and one as clerk of said election. Thus it will be seen that any official authentication of said election and the result thereof, must be under the hands of the directors. It is urged by the appellee that the appellant dealt at his peril with the appellee, for the reason that it is a municipal corporation, and that the rule of law is, that in dealing with them, parties must see to it for themselves that all the steps required by the law as a condition to their exercise of power, have been taken, and that if they have not, he must suffer the consequences.

The dishonesty of this defense is conspicuous, when we remember that the appellee continues to retain the money or consideration for which these bonds were issued, it being conceded that they received full consideration for them, and continue to hold and enjoy the same, while, by self-stultification, they are delaying the payment of an unquestionably just debt. It is the right and duty of the public to know the law which governs and controls the appellee, existing, as it does, alone by virtue of express law. By reference to the law the public learn and know the officers whose duty it is to call and superintend the election, and declare the result thereof; therefore, upon the legal presumption that these officers have done their duty when they say they have, the public have a right to rely.

It is undoubtedly the duty of parties dealing with such a corporation to make inquiry into the fact of whether or not the necessary steps required by the statute have been taken, and

Bolton v. Board of Education, Dist. No. 3.

that too of the proper parties, who are in possession of the official knowledge of such facts.

Under the provisions of this statute, we think it was the obvious intention of the Legislature to commit that question to the board of directors, and that it is made their official duty to know and declare the result of such election to the public; and when they have enquired and received the answer of such board, that all the steps required by the statute have been taken, they have a right to act upon it. They have a right to presume that the directors are speaking truthfully in making representations for the purpose of obtaining credit, which in this case they did. Printing these representations in the bonds so issued, they, upon principle, should now be estopped to deny their truth, thus taking advantage of their own wrong. In this case the appellee issued four bonds of $500.00 each, due four years after the date thereof, with interest at the rate of ten (10) per cent. per annum, one differing only in date from the other three, in the following form:

"$500.00.     [No. 1.]     BOND     [No. 1.]     $500.00
OF THE
"SCHOOL DIRECTORS OF DISTRICT No. 3,
"Township 37, North of Range 11, East of the 3d P. M.
"Know all men by these presents, That the 'School
" ' Directors of District No. 3, Township No. 37, County
" ' of Cook and State of Illinois,' are indebted unto A.
" H. Andrews & Co. in the sum of Five Hundred Dol-
" lars, for money borrowed for the purpose of building
" a school-house, according to the instructions of the vo-
" ters of said District, expressed by a vote as prescribed
" by an act of the Legislature of the State of Illinois,
" entitled ' An Act to amend the School Law,' approved
" February 16, 1865, by virtue of which act this Bond is
" issued. The said sum of money to be paid to the said
" A. H. Andrews & Co., or order, on the 2d day of No-
" vember, A. D. 1874, with interest from the date hereof,
" at the rate of ten per cent. per annum, interest to be
" paid annually. Principal and interest payable at the
" office of the County Treasurer of said county.

" In witness whereof, we, the School Directors of said " District, have hereunto set our hands and seals, this 2d " day of November, A. D. 1870.

" STEPHEN KEOUGH,    [SEAL.]

" ALFRED ROEBUCK,    [SEAL.]

" PETER TALTY,"    [SEAL.]

" Directors of said District."

" Signed and sealed by Stephen Keough, Peter Talty, " and Alfred Roebuck, School Directors of said District " No. 3, in presence of    D. C. SKELLY,

[NOTARIAL SEAL.]    *Notary Public.*"

Thus it is seen that the directors over their own hand and seal, issued their bond, acknowledging, in the most solemn manner, that they have received the $500.00 in money, in behalf of said appellee, and that they have taken the vote of the people upon that question, and declared the result in favor of issuing the same, and, continuing to hold said money, they come here and defend on the ground that they did not cause all said steps to be taken before issuing said bonds.

In the case of Town of Coloma v. Eaves, 2 Otto, 593, the court, having the same question under consideration, say: " If, when the law requires a vote of tax-payers, before bonds can be issued, the supervisor of a township, or the judge of a probate of a county, or other officer or magistrate, is the officer designated to ascertain whether such vote has been given, and is also the proper officer to execute, and who does execute the bonds, and if the bonds themselves contain a statement or recital that such vote has been given, then the *bona fide* purchaser of bonds need go back no further. He has a right to rely upon the statement as a determination of the question."

In the case of County of Warren v. Marcey, decided May 6th, 1878, the U. S. Supreme Court say: " That the bonds issued to aid in the construction of a railroad, appearing on their face to be regular and in accordance with law, the innocent purchaser from the county is protected, not withstanding the alleged defect in the notice of an election, ordered to be taken upon their issue,    *    *    *    and that from this dilemma there is no

escape, unless the privilege of commercial paper be abrogated, and it is made the duty of those who take it, to inquire into all of its previous history, and the circumstances of its origin, and this would be to revolutionize the principles on which the business of the commercial world is transacted, and would require a new departure in the modes and usages of trade."

It will be seen that, by the holding of the U. S. Supreme Court, the recitals on the face of these bonds are conclusive evidence in favor of *bona fide* holders; that all the necessary steps required by the statute has been taken before their issue. In the case of Maxcy et al. v. Williamson Co. et al. 72 Ill. 209, our own Supreme Court, in discussing this question in respect to bonds issued by Williamson County, use the following significant language:

" The bonds having been issued and got into circulation, all reasonable presumptions must be indulged in favor of their regularity, until overcome and rebutted; and even if irregularities are shown, they will not invalidate the bonds, unless they go to the power of the County Court to issue them.    It must be presumed, when such bonds are found in circulation, that the legal steps have been taken to authorize their issue. It may, no doubt, be shown that there was a want of compliance with the essential requirements of the law, but until shown we must presume that the officers have performed their duty, and the bonds were regularly issued, and are valid."

In that case, the bonds, in respect to which the court uses the foregoing language, contained no recitals, that all antecedent, essential requirements of the law had been complied with by the parties whose duty, under the law, it was to perform them, and also issue the bonds, as the bonds in this case do, and the court holds, that they, being found in circulation, and in the hands of a *bona fide* holder, must be held to be regularly issued and valid, until the contrary is made to appear. Even if fraud be shown in the issue of the bonds, it would not be effectual against a *bona fide* purchaser for value.

In the case at bar, the bonds, containing the recitals they do, bring them clearly within the rulings of the Supreme Court of the United States.    In the absence of a holding on

that question by our own Supreme Court in a case involving bonds, containing recitals in the bonds, that the requirements of the Legislative Act have been complied with, we feel warranted in adopting the holdings of the United States Supreme Court, particularly so when they rest on reasons so apparently unanswerable, as they do in this case. ·

We are, therefore, of opinion that the bonds in the hands of a *bona fide* holder, containing the recitals they do, conclusively establish a liability against the appellee: The Cairo & St. Louis R. R. Co. v. The City of Sparta, 77 Ills. 505; Mason et al. v. City of Shawneetown, 77 Id. 533; Marcy v. Township of Oswego, 2 Otto, 637. In the light of these views, we think the court below erred in holding that the appellant must prove that the essential requirements of the statute had been complied with by the appellee before the issue of the bonds in question, and in instructing the jury that their verdict should be for the defendant.

For these errors the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.